NOCHUMSON P.C.
By:    ALAN NOCHUMSON
       PA Attorney I.D. No. 85260
       NATALIE KLYASHTORNY
       PA Attorney I.D. No. 80368
123 South Broad Street
Suite 1600
Philadelphia, Pennsylvania 19109
(215) 399-1346 (telephone)
(215) 399-1347 (facsimile)                     Attorneys for Plaintiff

| | | |
|---|---|---|
| CHESTER AVENUE HOLDINGS LIMITED | : | COURT OF COMMON PLEAS |
| LIABILITY COMPANY, | : | PHILADELPHIA COUNTY |
| 107-109 South 13th Street, Unit B | : | |
| Philadelphia, PA 19107 | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | No. |
| 1401 John F. Kennedy Boulevard, 11th Floor | : | |
| Philadelphia, PA 19102 | : | |
| and | : | |
| MANGUAL DEMOLITION, INC., | : | |
| 2301 North 52nd Street | : | |
| Philadelphia, PA 19132 | : | |
| and | : | |
| CARLA MANGUAL, | : | |
| 2301 North 52nd Street | : | |
| Philadelphia, PA 19132 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Chester Avenue Holdings Limited Liability Company ("Chester Avenue Holdings"), by and through its attorneys, Nochumson P.C., hereby files this Complaint defendants City of Philadelphia (the "City"), Mangual Demolition, Inc. ("Mangual Demolition") and Carla Mangual ("Ms. Mangual") (collectively, the "Defendants"), averring as follows:

## I.   PARTIES

1.     Chester Avenue Holdings is a limited liability company organized and existing under the law of the Commonwealth of Pennsylvania with its primary address at 107-109 South 13th Street, Unit B, Philadelphia, Pennsylvania 19107.

2.     The City is a municipality duly organized and currently existing under the laws of the Commonwealth of Pennsylvania with a business address of 1401 John F. Kennedy Boulevard, 11th Floor, Philadelphia, Pennsylvania 19102.

3.     Upon information and belief, Mangual Demolition is a corporation organized and existing under the law of the Commonwealth of Pennsylvania with its primary address at 2301 North 52nd Street, Philadelphia, Pennsylvania 19132.

4.     Ms. Mangual is an adult individual who, upon information and belief, maintains an address at 2301 North 52nd Street, Philadelphia, Pennsylvania 19132.  At all times relevant thereto, upon information and belief, Ms. Mangual is and has been the principal of Mangual Demolition.

## II.   FACTUAL BACKGROUND

5.     On or about June 1, 2018, Chester Avenue Holdings purchased the real property located at and known as 5200 Chester Avenue, Philadelphia, Pennsylvania 19143 (the "Property"), an abandoned church, for the sum of $325,000.00.  A true and correct copy of the Indenture, dated June 1, 2018, transferring the Property to Chester Avenue Holdings is attached hereto as Exhibit "A".

6.     On or about January 31, 2019, Chester Avenue Holdings received an Initial Notice of Violation from the City's Department of Licenses and Inspections ("L&I").

7.      The said Initial Notice of Violation was issued by Inspector Anthony DiSabato ("Inspector DiSabato").

8.      The Property consists of three attached buildings – a red-roofed sanctuary, a fellowship hall and a rectory.

9.      The Property was not in danger of collapse.

10.     Furthermore, as it is vacant and not attached to any other properties, the Property is not a safety hazard.

11      The only part of this significant Property that needed remediation was the roof of the sanctuary.

12.     However, as Chester Avenue Holdings had always planned to convert the Property into an apartment building, it began to take the many necessary steps to apply for a building permit (the "Demolition Permit") for demolition and construction.

13.     On May 20, 2019, Metropolitan Group LLC ("Metropolitan Group"), the authorized agent of Chester Avenue Holdings, entered into a General Services Agreement (the "General Services Agreement") on behalf of Chester Avenue Holdings with Mangual Demolition for the demolition of the building structures situated at the Property as well as removal and disposal of all debris and associated work for the price of $225,000.00.  A true and correct copy of the General Services Agreement, dated May 20, 2019, is attached hereto as Exhibit "B".

14.     The General Services Agreement obligates Mangual Demolition to apply for and obtain all necessary permits, sewer lateral, demolition, water discontinuance, and governmental sidewalk closure and dumpster permits.  *See* Exhibit "B".

15.     Chester Avenue Holdings entered into the General Services Agreement with Mangual Demolition as Mangual Demolition had held itself out as highly knowledgeable and experienced in dealing with the various City agencies and departments in applying for and obtaining all the necessary governmental permits.

16.     The General Services Agreement remains in full force and effect "until the completion of the Services".  *See id.* at ¶ 3.

17.     The General Services Agreement contains a confidentiality clause pursuant to which Mangual Demolition agreed not to disclose, divulge, reveal, report, or use any of Chester Property Holdings' confidential information as to the Property.  *See id.* at ¶¶ 12-14.

18.     The General Services Agreement also contains an indemnification clause pursuant to which Mangual Demolition agreed to indemnify and hold harmless Chester Avenue Holdings for any damages and losses of any kind which result from any act or omission of Mangual Demolition and any of its officers or agents.  *See id.* at ¶ 20.

19.     Chester Avenue Holdings, through Metropolitan Group, paid Mangual Demolition the initial deposit on account of the General Services Agreement.  A true and correct copy of the check made payable to Mangual Demolition is attached hereto as Exhibit "C".

20.     On December 4, 2019, L&I issued a Building Permit (the "Demolition Permit") to Mangual Demolition, on behalf of Chester Avenue Holdings, for the demolition of the building structures situated at the Property.  A true and correct copy of the Demolition Permit is attached hereto as Exhibit "D".

21.     The Demolition Permit listed the estimate cost at $250,000.00.  *See* Exhibit "D".

22.     The Demolition Permit authorized the demolition of the building structures situated at the Property, as well as required a closure of the sidewalk adjacent to the Property and

the removal of asbestos contained in these building structures prior to the commencement of the demolition work. *See id.*

23.     On January 23, 2020, Joseph Solomon ("Mr. Solomon"), a representative of Chester Avenue Holdings, spoke with Inspector DiSabato about obtaining a sixty (60) day extension of the Demolition Permit to finalize funding and obtain zoning approval for the anticipated real estate development project, as Chester Avenue Holdings planned to perform remediation of asbestos, demolish the building structures situated at the Property, and then start construction of the new apartment building.

24.     Inspector DiSabato informed Mr. Solomon that a governmental sidewalk closure permit had to be obtained first before any demolition could commence and agreed to give Chester Avenue Holdings additional time to obtain the governmental sidewalk closure permit.

25.     Mr. Solomon told Inspector DiSabato that the governmental side walk closure permit would take at least a month to obtain as Chester Avenue Holdings needed to retain an a duly licensed engineer to create a site safety plan and then submit the governmental application which would take an additional period of time.

26.     Inspector DiSabato gave Chester Avenue Holdings the requested extension and further represented that the City would not demolish the building structures situated at the Property as it would be too expensive to do so and the City did not have the financial resources to advance the funds.

27.     On February 18, 2020, Mr. Solomon sent a text message to Inspector DiSabato, requesting an additional thirty (30) days to commence the demolition of the said building structures, as he was still waiting for the engineer to submit the application for the governmental sidewalk closure permit.

28.     Chester Avenue Holdings saw on the City's Atlas website ("Atlas") that the "Imminently Dangerous" violation on the Property was marked as "closed" on March 6, 2020.

29.     On May 1, 2020, Chester Avenue Holdings' landscaping contractor for the Property informed Mr. Solomon that he saw a fence installed around the perimeter of the Property.

30.     Mr. Solomon sent a text message to Ms. Mangual, asking if she knew anything about the installation of the fence and she responded, on May 1, 2020, that the Demolition Permit had been withdrawn and the City had put out the demolition for bid.   However, in doing so, she failed to inform Mr. Solomon that it was Mangual Demolition which had put up the fence and that Mangual Demolition had submitted a winning bid to the City for the demolition of the building structures situated at the Property.

31.     On May 11, 2020, Chester Avenue Holdings' principal went to the Property and was shocked to see Mangual Demolition in the process of demolishing the building structures on the Property on behalf of the City.

32.     Later that day, Mr. Solomon spoke with Ms. Mangual and she informed him at that time that Mangual Demolition had won the City's bid to demolish the building structures on the Property for $444,000.00.

33.     Chester Avenue Holdings then reviewed Atlas and saw that another building permit for the demolition of the building structures situated on the Property had been issued by L&I on May 4, 2020.  This building permit calls for the demolition of the building structures situated on the Property as part of the City's demolition program and to replace the entire sidewalk, topsoil and, seed the entire Property, and install a six foot (6') high chain link fence around the Property.

34.     The City never notified Chester Avenue Holdings either that its Demolition Permit had been withdrawn or that the City intended to imminently demolish the building structures situated on the Property during the course of the City's State of Emergency caused by the Covid-19 pandemic.

35.     Moreover, neither Ms. Mangual nor Mangual Demolition notified Chester Avenue Holdings that Mangual Demolition won the City's bid to demolish the building structures situated at the Property until the demolition work was actually in progress.

36.     Additionally, Ms. Mangual and Mangual Demolition concealed from Chester Avenue Holdings until May 1, 2020, after Mangual Demolition had won the City's bid to do the demolition work, that the Demolition Permit had been withdrawn, and that Mangual Demolition had submitted a bid to the City.

37.     Furthermore, the City and Mangual Demolition have refused to communicate with Chester Avenue Holdings regarding the demolition work taking place on the Property and it is believed that the City is doing unnecessary work on the Property.

38.     On Chester Avenue Holdings' information and belief, the City has not done any asbestos remediation work prior to the commencement of the demolition work which it had required Chester Avenue Holdings to do prior to such commencement.

39.     On May 13, 2020, Chester Avenue Holdings notified the City, in writing and otherwise, of its intention to exercise its rights and remedies against the City, among others, as a result of the illegal demolition of the building structures situated at the Property.  A true and correct copy of the May 13, 2020 correspondence is attached hereto as Exhibit "E".

40.     Chester Avenue Holdings anticipates that the City will place a lien on the Property and attempt to hold Chester Avenue Holdings responsible for the value of the monies paid to Mangual Demolition for the illegally performed demolition work.

41.     Additionally, upon information and belief, the City's demolition of the building structures situated at the Property has damaged the Property and the surrounding area to make remediation more difficult than if Chester Avenue Holdings had done the demolition itself.

42.     Moreover, the façade of the Property consists of precious and valuable stone which Chester Avenue Holdings planned to sell to offset its demolition and other expenses associated therewith.

Count I
Chester Avenue Holdings v. City
VIOLATION OF 42 U.S.C. § 1983

43.     Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

44.     42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of his, her, or its (as the case may be) federal rights.

45.     L&I failed to give Chester Avenue Holdings proper notice of the impending demolition of the Property or that the Demolition Permit had been withdrawn.

46.     By failing to provide Chester Avenue Holdings with proper notice of the impending demolition of the building structures situated at the Property, the City deprived Chester Avenue Holdings of the possession, use, and enjoyment of its Property in violation of its right to procedural due process under the Fourteenth Amendment of the United States Constitution.

47. By demolishing the building structures situated at the Property without giving Chester Avenue Holdings prior proper notice thereof, the City deprived it of its fundamental interest in the Property, and such deprivation being arbitrary and shocking the conscience, the City violated Chester Avenue Holdings' right to substantive due process under the Fourteenth Amendment of the United States Constitution.

48. Chester Avenue Holdings believes that the failure to provide proper notice of the impending demolition of the building structures situated at the Property or that the Demolition Permit had been withdrawn was based upon official policy or government custom or made by an individual with policy-making authority.

49. As a direct and proximate result of the City's violation of 42 U.S.C. § 1983, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against the City in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count II
Chester Avenue Holdings v. City
VIOLATION OF PROCEDURAL DUE PROCESS PURSUANT TO THE FOURTEENTH
AMENDMENT OF THE UNITED STATES CONSTITUTION

50. Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

51. Procedural due process requires that a deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing.

52. L&I failed to give Chester Avenue Holdings proper notice of the impending demolition of the building structures situated at the Property and the withdrawal of the Demolition Permit.

53.     By failing to provide Chester Avenue Holdings with proper notice of the impending demolition of the building structures situated at the Property, the City deprived Chester Avenue Holdings of the possession, use and enjoyment of its Property in violation of its right to procedural due process under the Fourteenth Amendment of the United States Constitution.

54.     As a direct and proximate result of the City's violation of Chester Avenue Holdings' right to procedural due process under the Fourteenth Amendment of the Unites States Constitution, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against the City in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count III
Chester Avenue Holdings v. City
VIOLATION OF SUBSTANTIVE DUE PROCESS PURSUANT TO THE FOURTEENTH
AMENDMENT OF THE UNITED STATES CONSTITUTION

55.     Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

56.     To state a claim for violation of the right to substantive due process, the plaintiff must allege the deprivation of a fundamental property interest and that the government's deprivation of that property interest is either arbitrary or shocks the conscience.

57.     L&I failed to give Chester Avenue Holdings proper notice of the impending demolition of the building structures situated at the Property and the withdrawal of the Demolition Permit.

58.     By demolishing the building structures situated at the Property without giving Chester Avenue Holdings prior proper notice, the City deprived it of its fundamental interest in the Property, and such deprivation being arbitrary and shocking the conscience, the City violated Chester Avenue Holdings' right to substantive due process under the Fourteenth Amendment of the United States Constitution.

59.     As a direct and proximate result of the City's violation of Chester Avenue Holdings' right to substantive due process under the Fourteenth Amendment of the Unites States Constitution, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against the City in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count IV
Chester Avenue Holdings v. City
VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES
CONSTITUTION

60      Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

61.     The Fourth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures.

62.     L&I failed to give Chester Avenue Holdings proper notice of the impending demolition of the building structures situated at the Property and the withdrawal of the Demolition Permit.

63.     By demolishing the building structures situated at the Property without giving it prior proper notice, the City unreasonably seized same and violated the Fourth Amendment of the United States Constitution.

64.     As a direct and proximate result of the City's violation of the Fourth Amendment of the Unites States Constitution, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against the City in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count V
Chester Avenue Holdings v. City
DECLARATORY JUDGMENT/SPECIFIC PERFORMANCE

65.     Chester Avenue Holdings incorporate by reference all prior paragraphs as fully set forth herein at length.

66.     Under the Declaratory Judgment Act, 42 Pa. C.S. § 7532, this Court has the power to declare rights, status, and other legal relations with respect to this dispute because an actual controversy exists between the parties.

67.     The City unlawfully withdrew the Demolition Permit and then entered into a contract with Mangual Demolition to demolish the building structures situated at the Property for $444,000.00, whereas Mangual Demolition was still under contract with Chester Avenue Holdings to demolish the building structures situated at the Property for $225,000.00.

68.     There was no good cause for the City's arbitrary and unlawful action during the course of the Covid-19 pandemic in the face of the current Demolition Permit and its knowledge

that Chester Avenue Holdings, through Mangual Demolition, was planning to demolish the building structures situated at the Property.

69.     Chester Avenue Holdings lacks an adequate remedy at law.

70.     As a result of the foregoing, Chester Avenue Holdings requests that the Court declare that the City cannot place a lien against the Property for the monies it has paid or will pay to Mangual Demolition for the demolition of the building structures situated at the Property and that Chester Avenue Holdings is not otherwise responsible to reimburse the City for any such payments.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against the City by declaring that the City cannot place a lien against the Property for the monies it has paid or will pay to Mangual Demolition for the demolition of the building structures situated at the Property and that Chester Avenue Holdings is not otherwise responsible to reimburse the City for any such payments and award such further relief as the Court may deem proper and just under the circumstances.

Count VI
Chester Avenue Holdings v. Mangual Demolition and Ms. Mangual
<u>FRAUD/INTENTIONAL CONCEALMENT/INTENTIONAL NON-DISCLOSURE</u>

71.     Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

72.     Mangual Demolition and Ms. Mangual intentionally concealed from Chester Avenue Holdings and/or failed to disclose to Chester Avenue Holdings until May 1, 2020 that the Demolition Permit had been withdrawn.

73.     Furthermore, Mangual Demolition and Ms. Mangual intentionally concealed from Chester Avenue Holdings and/or failed to disclose to Chester Avenue Holdings that the City's

Department of License and Inspection had impending plans to demolish the building structures situated at the Property and that Mangual Demolition had submitted a bid to L&I to perform the demolition work on the City's behalf while still being under contract to do so for Chester Avenue Holdings.

74.     The concealment and/or failure to disclose was material to the transaction at hand in that Chester Avenue Holdings would have taken affirmative steps to prevent the City's and Mangual Demolition's actions had it known.

75.     Mangual Demolition and Ms. Mangual either knew that the aforementioned concealments and omissions were false or acted in reckless disregard of their truth or falsity.

76.     Mangual Demolition and Ms. Mangual made the omission with the intent of misleading and inducing Chester Avenue Holdings into not exercising its rights.

77.     Chester Avenue Holdings justifiably relied upon the aforementioned concealments and omissions in failing to take actions to stop the City's demolition of the building structures situated at the Property.

78.     As a direct and proximate result thereof, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

79.     Chester Avenue Holdings is also entitled to payment of its reasonable attorneys' fees and to punitive damages given the outrageousness of Mangual Demolition and Ms. Mangual's conduct.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against Mangual Demolition and Ms. Mangual, jointly and severally, in an amount in excess of $50,000.00, together with punitive damages, interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count VII
Chester Avenue Holdings v. Mangual Demolition and Ms. Mangual
<u>NEGLIGENT MISREPRESENTATION</u>

80.     Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

81.     Mangual Demolition and Ms. Mangual intentionally concealed from Chester Avenue Holdings and/or failed to disclose to Chester Avenue Holdings until May 1, 2020 that the Demolition Permit had been withdrawn.

82.     Furthermore, Mangual Demolition and Ms. Mangual intentionally concealed from Chester Avenue Holdings and/or failed to disclose to Chester Avenue Holdings that the City's Department of License and Inspection had impending plans to demolish the building structures situated at the Property and that Mangual Demolition had submitted a bid to L&I to perform the demolition work on the City's behalf while still being under contract to do so for Chester Avenue Holdings.

83.     The concealment and/or failure to disclose was material to the transaction at hand in that Chester Avenue Holdings would have taken affirmative steps to prevent the City's and Mangual Demolition's actions had it known.

84.     As Mangual Demolition submitted a bid to L&I to demolish the building structures situated at the Property, Mangual Demolition and Ms. Mangual ought to have known that the Demolition Permit had been withdrawn and the City planned to imminently demolish the Property.

85.     Mangual Demolition and Ms. Mangual made the omission with the intent of misleading and inducing Chester Avenue Holdings into not exercising its rights.

86.     Chester Avenue Holdings justifiably relied upon the aforementioned concealments and omissions in failing to take actions to stop the City's demolition of the Property.

87.     As a direct and proximate result thereof, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against Mangual Demolition and Ms. Mangual, jointly and severally, in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count VIII
Chester Avenue Holdings v. Mangual Demolition
BREACH OF CONTRACT

88.     Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

89.     Chester Avenue Holdings entered into the General Services Agreement with Mangual Demolition.  *See* Exhibit "B".

90.     Mangual Demolition breached the General Services Agreement by: (a) failing to complete its services thereunder, and (b) disclosing, divulging, revealing, reporting and using Chester Property Holdings' confidential information to submit a bid to L&I to perform the demolition work on its behalf, and (c) failing to notify Chester Avenue Holdings until May 1, 2020 that the Demolition Permit had been withdrawn and that L&I had impending plans to demolish the building structures situated at the Property and that Mangual Demolition had submitted a bid to L&I to perform the demolition work while still being under contract to do so for Chester Avenue Holdings.

91.     Under the General Services Agreement, Mangual Demolition is required to indemnify and hold harmless Chester Avenue Holdings for any damages and losses of any kind which result from any act or omission of Mangual Demolition and any of its officers or agents.

92.     As a direct and proximate result of the breaches of the General Services Agreement, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against Mangual Demolition in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count IX
Chester Avenue Holdings v. Mangual Demolition
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

93.     Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

94.     Chester Avenue Holdings entered into a General Services Agreement with Mangual Demolition.

95.     In Pennsylvania, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

96.     Mangual Demolition breached the implied covenant of good faith and fair dealing by: (a) failing to complete its services thereunder, and (b) disclosing, divulging, revealing, reporting and using  Chester Property Holdings' confidential information to submit a bid to L&I to perform the demolition work on its behalf, and (c) failing to notify Chester Avenue Holdings until May 1, 2020 that the Demolition Permit had been withdrawn and that L&I had impending

plans to demolish the building structures situated at the Property and that Mangual Demolition had submitted a bid to L&I to perform the demolition work while still being under contract to do so for Chester Avenue Holdings.

97.     As a direct and proximate result of the breaches of the implied covenant of good faith and fair dealing, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against Mangual Demolition in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count X
Chester Avenue Holdings v. Mangual Demolition
UNJUST ENRICHMENT/QUANTUM MERUIT

98.     Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

99.     Chester Avenue Holdings conferred significant benefits onto Mangual Demolition by entering into the General Services Agreement to demolish the building structures situated at the Property for the amount of $225,000.00.

100.     Without Chester Avenue Holdings' knowledge, Mangual Demolition submitted a bid to do the same work for the City for $444,000.00, which bid the City accepted.

101.     It is anticipated that the City will place a lien upon the Property for $444,000.00, the amount it will pay to Mangual Demolition.

102.     It would be inequitable for Mangual Demolition to accept and retain such monies under the circumstances.

103.    The benefits conferred onto Mangual Demolition equal an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against Mangual Demolition in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count XI
Chester Avenue Holdings v. Mangual Demolition and Ms. Mangual
BREACH OF FIDUCIARY DUTY

104.    Chester Avenue Holdings incorporate by reference all prior paragraphs as fully set forth herein at length.

105.    A confidential relationship existed between Chester Avenue Holdings and Mangual Demolition and Ms. Mangual in that Chester Avenue Holdings depended upon and trusted Mangual Demolition and Ms. Mangual's professional expertise.

106.    Mangual Demolition and Ms. Mangual had a duty to Chester Avenue Holdings to protect its rights with respect to its dealings with the City and the completion of the demolition work related to the Property.

107.    That duty was breached when Mangual Demolition and Ms. Mangual  by: (a) failing to complete its services thereunder, and (b) disclosing, divulging, revealing, reporting and using  Chester Property Holdings' confidential information to submit a bid to L&I to perform the demolition work on its behalf, and (c) failing to notify Chester Avenue Holdings that the Demolition Permit had been withdrawn, that L&I had impending plans to demolish the building structures situated at the Property and that Mangual Demolition had submitted a bid to L&I to

perform the demolition work while still being under contract to do so for Chester Avenue Holdings.

108.    As a proximate result thereof, Chester Avenue Holdings have suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against Mangual Demolition and Ms. Mangual, jointly and severally, in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count XII
Chester Avenue Holdings v. Mangual Demolition and Ms. Mangual
TRESPASS/NUISANCE

109.    Chester Avenue Holdings incorporates by reference all prior paragraphs as fully set forth herein at length.

110.    Mangual Demolition's unauthorized entry upon the Property to perform demolition of the building structures thereon and other unauthorized work on behalf of the City has constituted a trespass and/or nuisance.

111.    As a proximate result thereof, Chester Avenue Holdings has suffered damages in an amount in excess of $50,000.00.

WHEREFORE, Chester Avenue Holdings requests that this Court enter judgment in its favor and against Mangual Demolition in an amount in excess of $50,000.00, together with interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Respectfully submitted,

NOCHUMSON P.C.:


By: /s/Alan Nochumson
        ALAN NOCHUMSON
        NATALIE KLYASHTORNY
        Attorneys for Plaintiff

Dated: May 13, 2020